The next matter, number 24-1719, SMS Financial Recovery Services, LLC v. Samaritan Senior Village, Incorporated et al. At this time, would Counsel for the Appellant please introduce himself on the record to begin? Good morning, or good afternoon at this point, Your Honors. My name is Carlo Uccellai. I represent SMS Financial. I'm here with Eric Wittner. He's weighting the bar results. Would the Court have an objection to Mr. Wittner sitting at the seat? Well, technically he's not admitted yet, so. No problem. Next time. Thank you. I wanted to, just to preempt your question, to reserve two minutes. Okay, you may. I don't even know if I'm going to use it. Go ahead. So, Your Honors, the case is very simple. I assume that's why you gave a 10-minute argument as opposed to 15 minutes. But what I'm saying in my brief is that there are three areas that are problematic for the District Court's decision. The first issue is the nature of the New York State Directive and whether or not it was even an impediment to allowing my client to go on to the campuses of the defendant. What I had said in my summary judgment was that it didn't apply to visitors. Visitors was ambiguous, but in researching the issue further, there's cases which say that because this is a directive and not, because it's a directive, it's only a recommendation, not a requirement. So, therefore, my client was correct in saying that they were not barred from entering the premises in New York, putting aside the fact that they were in other places. The two doctrines that were cited by the court were commercial impracticability and frustration of purpose. But what the court did not do in its analysis was they read the contract. We can all read the contract. What I'm saying in my brief is Mr. Barinello, really nice guy, Mr. Barinello was for the defendant, and Mr. Barinello basically said it's a document review. It's not an on-campus eyes on the patient. The gravamen, for lack of a better word, of the contract is not being on the campus. So what I was saying to the trial court was that I'm not looking to contradict the terms of the contract. What I'm saying is that Mr. Barinello's testimony must be used to look at what the gravamen of the contract is, and it's a document review. They look and see whether the nurse is coded correctly. It goes to the great Oz. The woman comes in twice a month. It goes to the great Oz in the back. They do a report, and then possibly they educate some of the people who are coding incorrectly. I deposed Mr. Barinello and asked him many, many times in many, many different ways whether all of the obligations could have been done remotely given whether you think that COVID was an impediment to going out to the campus. Assuming for the sake of argument, it was an impediment to going out to the campus. He said that everything could have been done fully remotely and that being on campus was not necessary. So I think it's very important to look at the testimony of Mr. Barinello because he was very honest about his testimony that it could be done that way. Now, if you look at the two doctrines, they're narrowly construed, sparingly applied, and as the SJC stated in Inland, the vast majority of the courts that have looked to apply the frustration and commercial impracticability to the COVID have declined, and I would ask this court to overturn the trial court and decline. If you look at commercial impracticability When you say decline, you mean that it's not a question of law. It's a question of fact. It shouldn't be decided on a summary judgment. Is that what you mean? Well, the cases do say that unless you can find enough facts in the record, it should go to the jury, but I think my sister counsel and I agree that the facts are the facts. It's not really – sending it back down for a finder of fact probably wouldn't garner much more except maybe a jury coming to a different conclusion. I think that all the facts that are before you are going to be the same facts in front of a jury. Well, okay. I mean, I'm surprised by that because I thought that if there was a flaw here, it was a flaw that this was a question of contract interpretation as opposed to an assessment of the application of the contract, these facts being applied to those legal standards. But you seem to be saying that it is a matter of law. Is that what you're saying? Well, in terms of the contract interpretation, the judge is entitled to interpret the contract, read the contract, and interpret the contract. So from that perspective, no. Yes, what the cases say is that it's a jury question as to the impracticability or frustration of purpose. Yes, it could be remanded for a trial on those purposes to see if a jury could come to the opposite conclusion. What I'm saying to you is that all I'm going to do is get Mr. Barinello back up on the stand to say everything he said in his deposition that was favorable to my client, that everything could be done remotely, that there's no reason why the defendant couldn't have fulfilled the contract. And let's assume for the sake of argument that the impracticability, you got me on the impracticability. The cases say if the contract can be suspended, it's got to be suspended. The judge dismissed that out of hand. Yes, but isn't that a jury question? That's my point. I assume. Isn't that a jury question? It could be. I mean, whether this is a contract whose purpose was completely frustrated by the COVID directive or was it a situation where the contract could have been suspended? And what I'm asking you is, isn't that a question of fact for a jury to decide? And I'm surprised you're not here saying it absolutely is a question of fact and it should go back down for a determination. Yes, you could do that. The case law definitely says that for the most part that it goes down for a trial, but if the facts are sufficiently found on summary judgment, it could be decided on summary judgment. So, yes, I'm not going to say it shouldn't be remanded if you think that the record is not complete. What I'm saying is that you don't even get to that point because COVID wasn't even an impediment because it was a directive and not a requirement. The saying no visitors, assuming we read it constrictively or broadly, did not apply to my client one way or the other. And furthermore, even if you want to apply the doctrine, yes, you could say that it's issue of fact, but the judge dismissed it out of hand on whether or not the contract needs to be suspended. And if you look at the footnote in the Cuomo case, the restrictions loosened up on July 10th. So we're talking about an under four-month restriction if you want to say that it carried the force of law. And rather than, as my client had asked, to suspend the contracts, they terminated them. So I think that there's enough here to just completely overturn the judge and say that it wasn't – that COVID was not an impediment because it was not the force of law. Are you asking us to direct the district court to enter summary judgment on your behalf? Is that what you're saying? That is correct. Okay. That is correct. If the court feels it's more appropriate to remand, I would say yes, it is probably more appropriate to remand, but it would be – I think that there's enough in the record that COVID was not an impediment because of the fact that it was a directive and not a regulation, which allegedly prohibited the entrance. And the way the SJC has interpreted the entirety of the COVID defenses and the frustration and impracticability, they just don't seem to want it applied to these contract cases because it – may I finish? Yes. It does not uphold the sanctity of contracts. Thank you. Okay. Thank you. Ms. D'Agostino. Thank you, Your Honor. I'm Mary D'Agostino from Hancock Osterbrook on behalf of Applebee's, which I'll collectively refer to as Samaritan. Judge Smith, you weren't on this decision in October of 2023, but you judge and you judge were on the Burt v. Board of Trustees decision, and you started that decision by saying the COVID-19 pandemic left a great many casualties in its royal wake, and you went on to describe that this was a once-in-a-century event that blossomed without warning. Now, when the events underlying this appeal were happening, not only was there a restriction prohibiting medically – prohibiting visitors that were not medically necessary from visiting nursing homes. I, myself, wasn't permitted to go into work. My son wasn't permitted to go into school. And those restrictions lasted well into the summer. In terms of the nursing home restrictions that are at issue, those lasted well into 2021. And, in fact, they were still in place in October of 2020 when this case was sued in Massachusetts State Court. Let's assume that you're absolutely correct that your client was prohibited by the directive from letting in a vendor. The question, then, for us is whether that went to the performance of the contract in a vital sense.  And so, given Barinello's testimony, as I understand it, he negotiated the contract, and he had a major role in managing the nursing home during the relevant period. Given his testimony that this could have all been done virtually, why doesn't that create a jury issue to see if the jury believes him or not? Because what you're doing, Your Honor, is what Plaintiff's Counsel is inviting you to do, which is look beyond the four corners of the agreement. You only look beyond the four corners of the agreement if there's some sort of ambiguity in the contract. No, no, I'm giving – let me add, then, to my assumption that the agreement does indeed anticipate that there will be two in-house visits periodically. The question, though, is – so you can't do that. The question is what you can't do vital to the performance of the contract. In other words, just showing that there's any part of the contract you can't comply with doesn't get you off the hook. You have to show you can't comply with the contract in a vital sense. Correct. Why is given – so as I read Barinello, he's effectively asked, well, is it vital to performing this contract that they actually come in-house for the visit or could they do this from the outside? He says, sure, from the outside. Correct, but what Barinello and what you're asking for defendants to do is accept something that wasn't bargained for in the contract. They bargained for two on-site visits per month for the duration of the contract. That formed the basis of the $6,100. In fact, if you look at the amount charged for the additional – Let me ask you this. Suppose the contract said they will wear blue medical gowns and then there was a shortage of no blue medical gowns, so they couldn't come in. Could your client walk on the contract? In theory, because this is a fully integrated contract, the negotiations don't matter. What Barinello thought about the negotiations don't matter. The contract is the four corners of the contract. It's a fully integrated writing. You think the impracticality defense to performance can be raised if there's anything in the contract at all that can't be practically complied with? Correct. If there was going to be any sort of – Could you cite us any case that says that? The contract requires that if there's any amendment to the contract, so performing services remotely or in some other form or fashion, the parties would have had to have come back to the table to agree to that and amend the contract in writing with both parties signing for it. That may have been possible, but they would have had to have gone back to the table and also renegotiate the value of the contract. That $6,100 per month included the two visits per month. In addition to other training and services they were supposed to be delivering in service. One of the issues that plaintiffs' counsel raised was frustration of purpose. I just wanted to be clear that the district court determined that frustration of purpose did not apply. The district court only concluded that impossibility and impracticality applied and applied those doctrines to conclude that one of the essential things that Samaritan had to do was to permit them on their campus to perform these services. That Department of Health directive made giving them access to the facilities impossible, which is why the doctrine of impossibility and impracticality applied. Unless the court has any other questions, I'll rest on my brief. Okay, thank you. Two minutes for Bobo. Please reintroduce yourself on the record to begin. Carlo Troy for SMS Financial. Judge, you exactly hit the nail on the head. That's the problem is that they're looking at it myopically to say you had to do two days, no other way that you could perform your services. That's why I questioned Mr. Barinello so extensively to see whether it was possible to do everything remotely, and his answer was yes. But if you look at the Laforte case, it does say just because it becomes more inconvenient doesn't mean that there's a commercial impracticability. And even if you find it, you still have to suspend according to Laforte, which they clearly said no to suspending. And the last thing I'd like to say with regard to the directive, if you uphold this decision, you're upholding law to basically say that that directive carries the force of law and not the recommendation, which would be inconsistent with New York law. So upholding the decision would be an incorrect determination of what the New York directive really is, and you're going to have a conflict between the First Circuit and New York about what the directive is. So in conclusion, I'd say thank you for looking at Mr. Barinello's testimony. I relied almost nothing of my own client's testimony because the summary judgment is too difficult when you rely on your client's testimony, but he was pretty clear and unequivocal that the whole entire contract could be performed remotely for the obligations of Harmony. Thank you for your time, Your Honor. Thank you. Court is adjourned until tomorrow, 9.30 a.m. Thank you very much. Thank you. All rise.